New arguments and rebuttals that have not previously been addressed, either by you or your counsel, or the counsel opposite. Call the first case of the day, United States of America v. Sealed Search Warrants. And Justin Smith, and we have Mr. Menz representing Mr. Smith. May it please the Court. The conflict is between the two 1989 cases, the Fourth Circuit and the Ninth Circuit. But there's a more interesting case that fits right in, too, that was almost ten years later. And that's the Bretton-Barkam, I'm sure I mispronounced that, v. Bolish case. We briefed it. But six families were invaded by warrants. No evidence was found. The families filed a Bivens action. And that's when this starts hitting point on point with our case here today. The Tenth Circuit judge says, you haven't specifically pleaded what you need to do. Similarly to one of your cases, Judge Rodriguez, when they wanted to suppress and you asked them to give more information. But he said, I'm not throwing you out. I'm going to send you back for a redo because what you should have done is petitioned the Court to unsuppress the affidavits, decide whether you have a Bivens action or not. And that's exactly what happened. What the Ninth Circuit opinion, which kind of contradicts itself a little bit in times mirror, and it's a little bit unsettling. One of the things that the opinion does is it sets aside their own Ninth Circuit decision in the grand jury case, in the Alaska grand jury case, which is cited in our brief. But another thing, while it gives a great deal of patronage to the Supreme Court case to Nixon and all of the other cases saying that you need to weigh these things out. Are you arguing that Smith has a right of access to the affidavits under 41? Or are you merely observing that the rule is consistent with the common law right of access? Both, Your Honor. You believe you have a Rule 41 claim specifically? Yes, Your Honor. Well, if you had a Rule 41 claim, though, why aren't you just asking to have your property returned and then tee it up this way? Why do you have to go this route? Well, the magistrate's judgment ordering a procedure which should have ultimately returned property, for example, our Fifth Amendment materials that they admit are Fifth Amendment, has never been sent back to us. It's a year later. I think if she hadn't been appealed to the district court and if it hadn't come here, I think we would be in front of the magistrate again asking for those Fifth Amendment returns and asking for the computer parts that we didn't get back and asking for it. And, of course, all that assumes that he was still open. He's not. They've closed him down. Can you still ask for it later? I'm sorry. Can you still ask for it regardless of the resolution of this part of it? If you do not reinstate some of Judge Palermo's order, we don't have any standing to do anything. You can't bring a subsequent action for the return of your items? Another Rule 41? Yes. I guess so. Because if that wasn't resolved by this and there's no ruling on it specifically for the return, can you bring a separate Rule 41 for the return of your items? I guess if you parsed your ruling out, that might be possible. It's always a little bit embarrassing to go back over the same issue. You might not meet if a judge has been overruled and you go back over the same specific issue that you've appealed on. We've appealed on 41. We've appealed on the common right. Are you asking for the affidavits to be unsealed with the redactions proposed by the magistrate judge?  Yes, Your Honor. That would be our preference unless the three of you find that there's a word or two that she should have taken out. You never get everything you want. We didn't get everything we wanted, but we got enough so that we could have, had it been moved on fast enough, probably kept the business from failing. Are you alternatively asking for a limited remand for the court to consider using the case-by-case approach but also considering the positive factors that favor the unsealing? I'm trying to figure out what all that you want here, and it's not clear in the briefing to me. We'd like, and I apologize, but we'd like, I think I asked for reinstatement of Judge Palermo's order verbatim. That's your first choice, but your backup is that you'd like a limited remand to instruct the district court to reweigh using the case-by-case but also using positive factors on your side of the ledger. Yes, Your Honor. This is the first non-ex parte hearing on this since over a year old. All the warrants are ex parte, so I don't know what the magistrate decided we should get, and I don't know what the district court decided we should get nothing. And I think it's a frightening thing if that is allowed to be the law, and really the Ninth Circuit's pretty much alone on that. But sitting as a district judge, I'm left wondering, okay, I thought the district judge in this case did this case-by-case specific analysis and just happened to go against you. I mean, what more did you expect of the district judge without compromising the underlying investigation? Thank you, Judge. I think, first of all, that he owedóit's de novo on the issues of law. It's not de novo on the fact finder who's the only person to have direct dealings. He had a dutyóhe didn't find that Judge Palermo abused the process. He had a duty toóI mean, I don't think he can set aside her fact findings without doing that. His herbs were specific. These are the reasons why. His were conclusory. He said he looked at it, and he's made conclusory. And every case says you can't do that, so you can't make a conclusory. You have to give reasons. If the reasons are so horrible, national security or something, you can seal your reasons. But he must have given reasons to us and then to you if he didn't think, well, you could be trusted with them before throwing out her fact findings. So is that a third backup position that you would like us to remand for him to give reasons explaining why under a case-by-case analysis these particular things shouldn't be redacted according to the magistrate judge's rulings? Is that your third position? If I have no other choice, yes, Your Honor. But I'd prefer that the magistrateóshe's done all the work. She clearly went case-by-case. I prefer that the magistrate's order be reinstated. And you have the redactions. If you agree, we didn't even get boilerplate. And I guess with this ruling, as it sits right nowóand I don't know if the district judge published his findings or not, the magistrate didóas it sits right now, we're not even entitled to boilerplate. The magistrate, the district court's position, once they give a warrant out, the government owns it. There's nothing you can do unless there's an indictment. The government owns the procedure from here to indictment. That certainly isn't what any otheróthat's a totalitarian position. I guess I'm still struck, though, by how you're harmed right now. Why couldn't you just tee this up with a 41G, ask that your property be returned? Why do you need the underlying affidavits to make your case? Well, we don't knowówe don't know that there will be a case. But part of the case is that the special agent has been going around telling all of the customers horrible things about the client. Part of the case is that the business has been shut down. Part of the case is that the employees scattered when they had all these guns put to their heads. So part of the case is why did they do it? What can I show my employees and my customers so that I can stay in business? If they can show them what happened in the Tenth Circuit, that there wasn't probable cause, at least for a layman, maybe he stayed open. Where I'm headed with my questioning is if you had just sought 41G motion to return property, did not seek the affidavits, in the motion to return property hearing, wouldn't it be incumbent now upon the government to show to the magistrate or the district judge reasons why this property couldn't be returned? And couldn't you develop your information that way rather than an unsealing of these affidavits? I think so, Your Honor. I think the 41G issue right now is pretty clear. They see stuff they call attorney-client privilege. I don't think that the affidavit says we're looking for attorney-client privilege information, but we've never gotten it back, not one iota. They took everything, every piece of paper except toilet paper out of the home, out of the business, out of the warehouse, and we've never received any of it. They've closed down the ability. If he wants to do anything with any of the planes, which are now all gone, millions of dollars, a multimillion-dollar business has been shut down because of the year passage. I think had this not been appealed to the district court, had we still been in Judge Palermo's court, these issues would have come up. Right now— But you can still bring your 41G. You're not barred. Didn't we establish that earlier? So you can still do exactly what Judge Rodriguez says, right? It's pending before this court right now. Does this appeal involve 41G, return of property? I don't think so. Yes, ma'am. I believe it does. I believe we're here upon the Commonwealth and on the 41G. I believe that we're asking— You're asking for unsealing of affidavits, not for return of property. Yes, Your Honor. So that's two different things. I don't believe that that's what this appeal concerns. Perhaps I'm wrong and I'll have to study it, but do you still have that right? And if you still have that right to bring your 41G, why do you have to go this way? Well, 41G would—if we were not here, if we had not been in the district court, they either would have given us the materials or we would have been back in front of Judge Palermo. That was the original motion. But you can still do that. Yes, Your Honor. So why can't you just wait and do that? Then his Bivens—if he has a Bivens cause of action, then that expires by statute of limitations before we find out. The agent did—I mean— Well, can't you file something on your good faith belief in the Bivens and then get the information? And then we're right where you'd be with Bridenbach v. Bullish where they're telling us to come back to you for permission to see the affidavits. We cannot in good faith—and that's where we are. We cannot in good faith encourage a client to file a Bivens without having the actual sworn testimony. Isn't that the order you should go in, though? You ask for the stuff back, and then if you need the affidavits of why they have it, then you ask through that process rather than having a freestanding seek the affidavits first. That's what I'm confused about. We've asked for both. But not in this proceeding. Yes, ma'am. Not here before the Fifth Circuit. I apologize. If my asking for her—Judge Palermo's motion to be reinstated in full doesn't do that, then I apologize for my ineptness on that. But right now, we are definitely here on those affidavits. We definitely want them. Our client definitely wants to know if he has a Bivens cause of action, and he definitely wants to be able to tell his clients this is what happened. The special agent lied about this. He said he had evidence of destruction of property. The picture that comes to mind is shredding the records. When he came by order of the court to discuss this stuff, he admitted that he didn't have that. He said that he had a picture of him moving records. There's a big difference in moving records, and we want to know what he said. I am troubled by the amount of time that's taken for this investigation to conclude and see whether or not there's going to be an indictment. But help me, where's the fine line going to be for judges like me? I mean, if we went with your position, everybody would be seeking affidavits to be unsealed. So when's the bright line? When do I say yes? When do I say no? Do I have to do a case-by-case review of every affidavit challenge now? Well, if you go back to the Baltimore case in the Fourth Circuit, there just aren't that many of them. There are very few. You see there are very few references from either side. It's just not going to happen that much. It's going to happen when a bunch of homes get raided with guns to children's heads. It's going to happen when a $14 million-a-year business is shut down immediately and they can't move. But it's rarely going to happen. Very few citizens have the ability. This is pro bono right now because they've broken his back. Very few citizens have the ability to contest pre-indictment procedures. So it's not going to happen. But what it will do is if a judge says, as was said in this, the exact statement of the judge in the order, the government officials conducting the investigation are better equipped to determine what disclosures could be detrimental to the investigation. In other words, the bench has to move out of the way because the government is better equipped. That's just not it. I mean, I understand Fourth Amendment is a lot of work. You've got the magistrate has to decide whether or not to grant that. They lean towards the government. But immediately afterwards, these warrants just – Judge Jolly knows the time when the warrants were served with the affidavits. And now they're being sealed. And the case law that we've cited shows that this is a tendency now. When these cases came out in 1989 and even up to 2004, the citations were, well, it's very rare that they're sealing records. Now they're sealing these affidavits in every tax case. Every seizure is a sealed record. The burden of proof on these things is worse than the national security. There's a Fourth Circuit case saying for national security. Even the Nixon case, the president had to answer the court. But now, under this Ninth Circuit ruling, which has been adopted only in one other circuit, every other circuit's going, including the language of the Fifth Circuit, for full disclosure and transparency. Every other circuit is leaning or has ruled, like the Tenth Circuit, like the Eighth Circuit, and like the Fourth Circuit, that you have to do that balancing in those occasions when a citizen needs help. This is an occasion where a citizen needed desperate help to see what was in those affidavits. The court here did no real balancing. There was no balancing. And so shouldn't the proper thing be for us to send it back or to do balancing? That would be proper, Your Honor. I mean, instead of just ruling ourselves on the basis of what the magistrate did because the district judge had serious reservations apparently about what the magistrate did. Yes, Your Honor. And if the district judge does not find abuse of discretion, then the balancing should be by Judge Palermo. If he finds an abuse of discretion, then, of course, he's supposed to overturn it. I don't think that's going to happen. But, yes, Your Honor, you've precisely stated exactly what the case law says should be done. But, I mean, given how prolonged this investigation has been, as Judge Rodriguez pointed out, it does seem that you can bring it to a head more quickly by just reinstating the magistrate judge's order. Absolutely, Your Honor. And it has been well over a year since the appellate briefs were filed, and Judge Rodriguez is correct. When was the search warrant executed? The search warrant was executed March 2016. Thank you. Sixteen. Yes, sir. Okay. You've certainly saved some time for rebuttal, Mr. Menz. And, Ms. Mitchell, we'll hear from the government. Thank you. May it please the Court. Good morning. My name is Carmen Mitchell, and I represent the government in this matter. What is the status of this investigation that apparently started in October of 2014 with subpoenas and appears to just be in limbo or stasis or something? This investigation is ongoing, just as the government stated. It's obviously ongoing, but we're saying it's been ongoing too long. It has been ongoing. How do you explain this huge amount of delay and the injury that Mr. Smith is suffering now as a result of your just fooling around? Well, Your Honor, one of the issues I raised in my brief was jurisdiction and lack thereof in this Court. And that's my argument exactly, is the Supreme Court has said there should be ---- You don't want to argue jurisdiction. You don't want to argue the misconduct or the dilatory tactics of the Internal Revenue Service. Your Honor, I'll get right to that now. With regard to this investigation, this was a criminal ongoing investigation. The affidavits and application for search warrants were provided to Magistrate Judge Palermo. That was the first warrant. The second warrant and the third warrant were provided to Magistrate Judge Stacey. Both of those magistrate judges found probable cause for the issuance of those search warrants. Were those search warrants based upon false statements that there were shredding and destruction of documents or something that wasn't actually taking place? Your Honor, as the affidavits are sealed and the application, everything is sealed, my argument here is the magistrate judge had reason to issue those search warrants. The fact that Mr. Smith now conflates the execution of the warrants with regard to his claim about guns ablazing, et cetera, that's two different issues here. Is it your position that there are inaccuracies, or is it your position, but that's just good faith, or is it your position, or do you admit that there are false statements in the affidavits? The government would not admit that there are false statements in the affidavits. First of all, those were sealed. Secondly, as this Court knows— Sealed doesn't tell me whether or not—the opposing counsel said to this Court just not five minutes ago that the person seeking the warrants misrepresented that they were destroying items and that that wasn't true. So what is your position on that point? My position on that point is that appellant is trying to attack here the validity of the issuance of the search warrant by stating— Your point is neither— Neither— In answer to Judge Elrod, it's neither yes nor no. I mean, you're not answering her question, are you? And your question was does the government concede that there was improper conduct here, and my answer would be no. There was no unlawful conduct by the government. Did they misrepresent that they were destroying documents? Does it say they were destroying documents and they weren't? Was the government representing that Smith was destroying documents? Yes. And was that incorrect? So the government—again, this is the difficulty— There's a yes or no to that. Okay. The government says there was no unlawful conduct. There were no— There were no inaccuracies by the government here. So you're saying that he misrepresented the facts. That is correct, Your Honor. That is correct. Draws a line. And I also wanted to answer Judge Elrod your question with regard to whether or not this appeal before this Court currently is about the denial of the Rule 41G motion. And it is not, Your Honors. As you can see from the briefs, the opening brief, in this case— But they can still go back and complain they want their property back. They can, Your Honor. So you're not going to argue that it's raised judicata or they should have brought it here or anything like that? Well, Your Honor, timeliness is a separate issue. So I'd like to let you know the procedural aspects of this case. And I did raise it in my brief in a footnote. And that is that in their motion— So you are going to—you're going to object to them raising it by saying it's not—I have a whole timeline of the whole case. So I don't— Yes. Okay. So I'm asking you, if they try to bring their 41G now, are you going to say that they can't bring their 41G for any reason? I think they can revisit that, Your Honor. Okay. Certainly they could. That's the official position of the government. You're representing the government, and so you're saying that they can bring it without any procedural bar. With regard to the fact that Magistrate Judge Palermo did deny the 41G motion. She denied it. They did not appeal that to the district court. The only appeal from the Magistrate Judge to the district court here was the government's appeal with regard to the issue— that issue in this appeal here, which was their request to unseal the search warrant affidavit. Let me ask you a question that is a little—well, certainly not irrelevant, but irrelevant to the specific arguments, perhaps. But why is the government waiting so long to indict? That's the problem. You never bring it to a head. You leave this man out there dangling for three years. I mean, that is not—you're not justifying that, or can you justify that? Well, Your Honor, as the appellate lawyer on the case, I would say on this issue here before this court, which is whether or not this court should hold there should be an unsealing pre-indictment with regard to search warrant affidavit, the appellate attorney here, myself, may rely on the record on appeal. And that's what we have. That's what's been raised. The denial of the Rule 41g motion has not been raised. Any kind of speedy trial act doesn't incur until after the pre— But that's not your argument on lack of jurisdiction. See, you seem to be justifying the inordinate amount of time this is all taking and then saying even though it takes all this time, no appellate court has jurisdiction to review any denial by a district court. I mean, those are two inconsistent positions. The fact of the matter is, Your Honor, that Smith does have other remedies. And that would be either a Bivens claim, some kind of civil action. It would be filing another motion for reconsideration of a Rule 41g. And in fact, he could have many recourses. He could invoke some kind of statute of limitations. He could, after an indictment has been— Invoke statute of limitations on what? Once the indictment's issued, there could be a statute of limitations. But what if there's never an indictment issued? Then he could revisit the issue with the court and say to the district court, this is no longer an ongoing investigation. And then the government would be put to its burden to show that there was an ongoing investigation. And does that come up? I'm sorry. How long does he have to wait to say it's no longer? Does he have to wait another year? Does he have to wait five more years? Your Honor, he's already waited a year. I know. I'm asking, when is it the government's position to say this is no longer an ongoing investigation and he would be entitled to have his stuff back? I mean, are you allowed to keep it for 10 years if you think you want to noodle around on it for 10 years? I think it's certainly Smith's prerogative to raise it again in district court to say, hey, it's been a year and a half, a year, and I'm seeing nothing else movement. And then the district court— Under what grounds? What's his vehicle to get into district court on that? I think it would be a renewal of the 41G and or—I mean, that's what he wants here, right? He wants to see the sealed search warrant so that he can challenge the lawfulness of the execution of the search warrant. And so here he has those rights to go back. Instead, he appealed, and now here we are at piecemeal litigation discussing the unsealing of the search warrant affidavit. Why isn't he entitled, as the magistrate judge found, to at least the boilerplate parts of the sealed affidavits? There's nothing earth-shattering in those. Right, Your Honor. The district court, again, reviewed the affidavits. It reviewed the redactions made by the government, and it also reviewed the redactions made by Magistrate Judge Palermo. And the district court made a factual determination, which, by the way, must be reviewed by this district court— I mean, sorry, by this court for clear error. It made that factual determination that it was inappropriate and just unwarranted to redact so much that you just leave the boilerplate here. To unredact—I mean, to redact so much. What are you— The district court did review the redactions both proposed by the government— I'm asking why—I don't see that the district court's focus specifically on the boilerplate being redactable. And why is the boilerplate redactable? It seems that it would be—should be unredacted. I think the district court here found it impractical. Well, it's not impractical where it's already been done. It's already been—all the work's already been done by the magistrate judge. So it's not impractical to say this is boilerplate and why should it be—are you—do you have a legal argument why the boilerplate should be redacted out? I don't, other than that the district court made that factual determination that it was impractical. And I'm asking this court to find it— How can it be impractical if it's already done? Because then what does Smith have to—then he's going to challenge—I mean, regardless, he was going to challenge that issue on appeal, right? The extent of the redaction or that it was unsealed. If it was merely redacted and there was only boilerplate language, then we would be standing here discussing the extent of the redactions that were unsealed. Maybe that's what we should be here standing talking about. We have a policy in the Fifth Circuit that things are supposed to be—you know, we make you—we do redacted copies of your briefs if you're going to seal something. We make—we're very charry about sealing. So why shouldn't—if somebody's already done the work and there's not a legal basis for it to be sealed, and I don't think you've said there's a real legal basis for the boilerplate to be sealed, then why—what is your—how can you object to the revealing of the boilerplate? Your Honor, my argument for this Court is that there is no common law right of access to pre-indictment search warrant affidavits that have been sealed. That's where I want to pick up on. So that's your argument, but what's wrong with this case-by-case specific analysis? I think it would just be, again, time-consuming and it would open the floodgates for piecemeal litigation. One of the arguments here is that here we are a year later arguing this here in open court in the appellate section, but again, that is piecemeal litigation. And so if you allow for that, it's going to open the floodgates and stop matters and just have litigation time and again. Floodgate. You know, a floodgate argument, it's very general and raised about a lot of matters, so it's a weak argument. Sure, Your Honor. One of the cases I cited in my brief was the DiBella case, and I also cited the Hollywood Motor Company case cited in my brief. And again, those both cases, when you look at those together, the Supreme Court says there is a reason for this finality ruling—I'm sorry, statute 1291— and the Hollywood Motor Case Company I cited for the proposition with regard to no piecemeal litigation, that case discusses further that in criminal cases there are only three exceptions to the finality rule. One is the reduction of bail. One is a pretrial motion to dismiss the indictment based on double jeopardy. And the third type of criminal issue that is appealable and is not a non-final order is a congressional immunity based on speech and debate clause. You take that along with the DiBella case that I did rely heavily upon, and we see why the argument here is that this Court, I would propose, adopt the reasoning in the Fiorina case. That's the Third Circuit case in which the Third Circuit viewed this exact issue, which is—the issue here is whether or not it's appealable to challenge the denial of a motion to unseal a pre-indictment search warrant affidavit. And so assume, for argument's sake, we don't go there and we say there's a right to challenge pre-indictment review. So fashion for us what this review should look like. If there's a pre-indictment review— There is. Just assume that to be the case. Yes, Your Honor. What would be reasonable for the government to produce, and what would be reasonable for the magistrate judge and district judge to do in this review process? Sure, Your Honor. If this Court were to so hold, the governing test is the common law right of access test and not the First Amendment test. And that common law right of access test is that the district court must balance the common law right of access against interests favoring nondisclosure. So documents can remain under seal upon a showing of countervailing interest that outweighs the presumption of access. Again, it doesn't have to be substantially outweighs. It's not the more difficult standard in the First Amendment, which is that the government would have to show some kind of compelling government interest, and the denial is narrowly tailored to serve that interest. Rather, the test would be the common law right of access test that this Court did use in Van Weyenberg. Again, I would like to stress to this Court that the deference due here is to the district court rather than the magistrate judge. Under 28 U.S.C. 636, the magistrate judge had authorization based upon the district court's authorization to seal. And here the district court— Let me get back to the point. I mean, if the district court is going to exercise its discretion and hopes to shield itself from any further review, they've got to give more specific reasons than are given in this case to survive abuse of discretion standard. Here the district court did have numerous, as you saw in the record, had numerous pleadings that it reviewed, and that included the government's basis for the request that they maintain the affidavits under seal. And that was where the government argued that unsealing would jeopardize the integrity of the ongoing investigation. It could lead to obstruction. It would reveal the identity of witnesses. It would require the government to give out return information under Section 6103. And likewise, it was very revealing of the investigatory tools, and that's at ROA 31 through 32 and 164 through 166. And so the district court reviewed all of the numerous pleadings that had been handled in this. It did its own de novo review. It looked at the affidavits in camera, and then it looked at everything and determined— here it did go into fact-specific instances because it made that factual determination. It determined that this particular investigation would be compromised by allowing access to the affidavits. An appellant here has shown no clear error in that factual determination. The order was specific and it was narrow. The order specifically said that this district court was not ruling that in the instance where a criminal investigation was not ongoing, that it couldn't later be unsealed. How is it specific and narrow when it didn't go through any of the portions of the affidavits? And it didn't give any explicit reasons. We remanded in the test master's case, for example, for the district court to provide more explicit reasons and to go point by point. And if something was going to continue to remain redacted, you had to justify that. Yes, Your Honor. And this doesn't appear to be specific at all. I think the district court here was really trying to do the right thing in that the district court here said— it reviewed, it laid out those three cases, and it said in this case, it was the Eighth Circuit case, that circuit held that a court would need to look at the affidavits, that it would need to look at a case specific. And so it was saying, I have done that. I have looked at the affidavits. And so, you know, the court was very cognizant of the Times New Roman case, of the cases that Smith relied upon. Right, but being cognizant of cases and saying you reviewed things doesn't give us adequate case-specific analysis so that we can do our reviewing job. Well, I think, Your Honor, the court had before it the matters that were sealed and did the in-camera review. It had all of the arguments, and it implicitly adopted the arguments that the government had made. I guess implicit is somewhat of the problem. We don't have an analysis. How do we review whether the court balanced correctly if we don't have how the court balanced? Well, it had the arguments before it by both parties. And why shouldn't we apply test masters our precedent and remand for a limited remand to require specificity? I think because, Your Honor, then that, I guess, is assuming that you are finding that a common law right of access exists for pre-indictment search warrant affidavit unsealing. And assuming that, then I would argue here that the district court did make sufficient findings that we're able to review here on appeal. With regard to my final conclusions, I see my time is almost up. I would just request that this court first hold that it doesn't have jurisdiction over this case under Dybala and under the Hollywood Company Act and under the prohibition of piecemeal litigation. And secondly, if this court does find that a common law right of access exists, I would ask this court to determine that the district court here did make a factual determination by reviewing all of the pleadings and what it had before it, including the affidavits, and find that the district court did not clearly err and did not abuse its discretion. Should this court have no further questions, Your Honors? Okay. Thank you very much, Ms. Mitchell. Thank you. Mr. Manns, you have some time for rebuttal. Thank you. May it please the Court. The Hollywood Motor Company that she has relied on in the Supreme Court case, it said there's no right to an interlocutory appeal on vindictive prosecution. It has absolutely nothing to do with this case, unless I have read it wrong. You do have what you call a vindictive delay. Yes. I agree with that, Your Honor. And in line with what you just said, Judge Shelley, typically in a tax case, we have the right to a D.C. conference long before we get to this point to decide whether or not they want to indict. We've asked for that. We've asked for one from the U.S. attorney. We've all moved ears. Nothing. And generally, you would expect that to happen. They can violate the rules if they want to, and there's no . . . but they rarely do. Typically, in this type of a case, we're not dealing with anybody accused of violence or smuggling or anything like that. Typically, you don't need search warrants. You pick up the phone and you say, Look, I want these records and all the income records unless . . . Maybe they're claiming two sets of books. I don't know what they're claiming. Maybe if they're claiming two sets of books, then that's a reason why they can't just go to us or the bank. If they actually . . . and they use the word destroy in their brief, so if that was a typographical error, I apologize for that, too. When Agent LaRue . . . they said destroy or remove. And when Agent LaRue met with me at the order of Judge Palermo, he said destroyed and then he kind of backed down. I had . . . he decided he wanted to leave then. I said, Did you lie to me? Did you lie to the U.S. attorney? I mean, you said destroy. It's been in all this stuff. And I was . . . I had just broken my hip. I was in a wheelchair, and he had to actually get out of the . . . to avoid following Judge Palermo's order, he had to push me out of the way. And he did, and he left the office. And we never did finish negotiating what we should do about getting the papers that should be returned to us. There's papers that have nothing to do with this investigation, log papers. They did finally return a checkbook. They were laughing at each other. Why did you grab the checkbook? Why did you grab a box that says attorney-client privilege stuff? I'd be willing to bet my law license that none of these three magistrates put in their warrant or affidavit permission to seize attorney-client privilege stuff. So they just grabbed everything out of three locations and closed that business down. They did it in a very public way. Counsel, the opposing counsel says that you should have gone back to the district court sometime in the past year to complain about the length of the investigation, and or you should have just gone ahead and filed your Bivens claim. Do you have anything to say about that? Yes, ma'am. And the case that I already cited in the Tenth Circuit says no, no to that. They gave permission one time. They said, King's X on this, we're going to send you back and ask for the affidavit before you file your Bivens action. I don't know if LaRue is even on the affidavit. Maybe there's nothing on that affidavit that says destroy. Maybe they told the same thing to all three magistrates, but I cannot in good faith do it. I don't know. For a very wealthy person who's now been impoverished, he's going to have to find someone on a contingency fee, and hopefully he'll find an ethical attorney that will take a Bivens case, and if he does that, no attorney is going to even look at it for Bivens without seeing that. So the Bivens statute will probably pass if this court doesn't give him that access, and maybe there is no Bivens cause of action, which is why there should be transparency. The government's fallback is no transparency, and that's frightening. And the government's position basically is, Ms. Magistrate, you've ruled. You now have no say so anymore on your arrest warrant. And the judge has said so, too. We can't have the responsibility. The district judge can't have the responsibility. It's a horrible responsibility, I acknowledge. And it — What is the standard review that we applied to the district judge's analysis? Well, his analysis on law is de novo, just as your analysis today is de novo. But his analysis on fact findings is — Clear error? I believe abuse of discretion. I believe that's the — the government has pled that in their brief, too. I heard clear error today. Is that what you heard? I may be mistaken. I did not — but whatever — I'm fine with that. It's clear error not to give a specific examination. Both sides, by the way, even the — even when the Third Circuit, which is the only one that's given any endorsement at all, and it's not to the level the government has stated, and it's in both of our briefs, but both the Third Circuit and the Ninth Circuit, neither one of them have ever said eliminate the balancing test completely. It's so horrific. It's so totalitarian. Even in the Ninth Circuit opinion, they just said, look, we've got to let the government do whatever the government's going to do. Even there's terrorist cases. Even there's cases dealing with presidents. The whole purpose of the pretrial judiciary is the balancing test. And it is an awesome responsibility, but it has — if it's not in the judiciary, then we don't have separation of powers. If it belongs to the government — Okay, Mr. Menz, I believe you have a red light. I'm sorry. Thank you, Your Honor. Thank you, Your Honor.